# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEUANG BOUNNHONG, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL ASTRUE, Commissioner of Social Security, <br><br> Defendant. | 1:10-cv-02181 AWI GSA <br><br> **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **BACKGROUND**

Plaintiff Peuang Bounnhong ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//

//

1

**FACTS AND PRIOR PROCEEDINGS[1]**

Plaintiff filed an application for benefits on April 23, 2008, alleging disability as of September 24, 1999.  AR 95-102.  Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  AR 59-62, 66-70.[2]  ALJ T. Patrick Hannon held a hearing and subsequently issued an order denying benefits on April 19, 2010, finding Plaintiff was not disabled.  AR 12-18.  On September 23, 2010, the Appeals Council denied review.  AR 1-3.

**Hearing Testimony**

ALJ Hannon held a hearing on January 25, 2010, in Fresno, California.  Plaintiff appeared and testified with the aid of an interpreter; she was assisted by attorney Jeffrey Milam.  Vocational Expert ("VE") Cheryl Chandler also testified.  AR 19-27.

Plaintiff's testimony was limited to the fact that she applied for supplemental security income benefits in April 2008, alleging disability as of 1999, and timely appealed the denial of benefits.[3]  AR 22-23, 26.[4]

VE Chandler was asked to assume a hypothetical worker with a poor ability to:  follow work rules, relate to coworkers and interact with supervisors, deal with the public, use judgment, deal with work stress, function independently, and maintain attention and concentration.  The VE indicated that no work would be available for such an individual.  AR 26.

//
//

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2] Plaintiff has twice previously applied for benefits.  Both applications were denied.  AR 12, 31-37, 44-47.

[3] Although Plaintiff was represented by counsel, he did not elicit any testimony.  Rather, the questions posed were elicited by the ALJ.

[4] After clarifying various exhibits to the record, Plaintiff's counsel made an opening statement.  *See* AR 23-26.

**Medical Record**

The entire medical record was reviewed by the Court. AR 178-330. The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process the ALJ determined that Plaintiff did not meet the disability standard. AR 12-18.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 23, 2008, the application date. AR 42. Further, the ALJ identified low back pain, hypothyroidism and depressive disorder as medically determinable impairments. AR 14.

Next, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that significantly limits her ability to perform basic work related activities for twelve consecutive months; thus, the ALJ found Plaintiff did not have a severe impairment or combination of impairments. AR 14-18.

In conclusion, the ALJ determined Plaintiff was not disabled and had not been under a disability since the date of application in April 2008. AR 18.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred (1) at step two by finding no severe impairment or impairments; (2) by failing to give specific and legitimate reasons for rejecting a treating physician's opinion; and (3) by failing to fully and fairly develop the record.

//
//
//
//
//
//
//
//

4

# DISCUSSION[5]

### A.   *Step Two Findings*

Plaintiff contends the ALJ erred in finding no severe impairment. More particularly, Plaintiff asserts that the opinion of board certified psychiatrist Ekram Michiel, M.D., supports her position because Dr. Michiel found Plaintiff's depression "to be more than 'mildly impaired,' she was, overall, moderately impaired." Further, Plaintiff asserts her lower back pain amounts to a severe impairment. (Doc. 15 at 5-8.) The Commissioner replies that no error occurred, and that Plaintiff has failed to meet her burden of establishing any severe impairment. (Doc. 16.)

At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment. The regulations define a non-severe impairment as one that does not significantly limit a claimant's physical and mental ability to do basic work activities. An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508; 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. An overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987). Further, the ALJ must

---

[5] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

consider the combined effect of all of the claimant's impairments on his or her ability to function, without regard to whether each alone was sufficiently severe. 42 U.S.C. § 423(d)(2)(B). The combined effect "shall be considered throughout the disability determination process." *Id*. The adjudicator's role at step two is further explained by SSR 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28.

### 1. *ALJ Hannon's Findings*

Here, ALJ Hannon found that Plaintiff had the medically determinable impairments of low back pain, hypothyroidism, and a depressive disorder. AR 14. Next, he determined, after reviewing the entire record, that none of those impairments significantly limited Plaintiff's ability to perform basic work related activities for twelve consecutive months. As a result, Plaintiff's impairments were determined to be not severe. AR 14-18.

Specifically, ALJ Hannon found as follows:

> Claimant has a history of low back pain, which is controlled with pain medication. An x-ray of her low back taken in February 2008 showed only mild degenerative changes, and claimant was referred to physical therapy and prescribed medication. She received a trigger point injection in her right buttock in April 2008. She also responded well to chiropractic treatment between May and September 2008. Although an October 2008 MRI of the sacroiliac joints revealed mild symmetric degenerative changes, marked L5-S1 bilateral facet hypertrophy and edematous change within the posterior elements, and bilateral neural foramen narrowing, her primary care physician determined that surgical intervention was not necessary because the pain was tolerated with medication. Similarly, treatment notes from June 2009 and January 2010 document claimant's low back pain is well-controlled with medication.
> Claimant's hypothyroidism is likewise controlled with medication. Her TSH levels were noted to be within normal limits in February 2008, August 2008, and June 2009. The only treatment prescribed for her thyroid condition is medication.
> In October 2008, claimant was examined by internal medicine consultative examiner, Dr. Steven Stolz. He found claimant to be well-developed, well-nourished, healthy-appearing, in no distress, alert, cooperative, and well-oriented in all spheres. Aside from mildly reduced grip strength on the right, physical

6

examination was normal, with negative straight leg raise, excellent range of motion, no bony tenderness, and normal muscle tone and strength. As a result, Dr. Stolz opined that there was no objective evidence for any ongoing medical disorders that would place any physical limits on claimant's work-related activities. Dr. Stoltz's opinion is consistent with and well-supported by the record as a whole, and the undersigned accords it great weight.

For the same reasons, the undersigned gives great weight to the State agency medical consultant's assessment of a non-severe physical impairment.

Claimant has also been treated for depression, which is similarly well-controlled with medication. She began treating with Fresno County Mental Health Services in August 2004. By November 2007, she reported feeling less anxiety and that medication was helping to calm her down. She was noted to be doing well in January 2008, at which time she had a normal mental status examination. In April 2008, she was noted to be stable on her mediation for a "long time," and her treating psychiatrist, Dr. Wen Chu, felt that she was well enough to be discharged from his care and that her primary care physician could manage her medication. Her mental status examination was again normal. In June 2008, claimant was observed to have demonstrated marked improvement in coping with depression; the skills to cope with daily stressors, fear from war nightmares and memories, and personal problems; and improved her qualify of life by becoming more involved in family chores, social activities, and recreation. Dr. Chu stated claimant was stabilized with medication, discharged her from his care, and referred her back to her primary care physician.

Interestingly, claimant began treating with a private psychiatrist, Dr. Maximo Parayno, Jr., on June 16, 2008 - three days before her final examination at the Fresno County mental health clinic. Even more peculiar are the results of the initial psychiatric evaluation. Dr. Parayno found claimant oriented only to person; blunted affect; depressed mood; nightmares; feelings of hopelessness and worthlessness; poor memory, concentration, sleep, and appetite; low energy; and no interest. He made similar findings at visits through January 4, 2010. Dr. Parayno's findings are so wholly inconsistent with those of Dr. Chu from Fresno County Mental Health Services[] that the undersigned questions the validity of Dr. Parayno's findings.

As such, the undersigned accords little weight to the January 2010 opinion of Dr. Parayno, as his opinion that claimant has poor ability to perform nearly all mental work activities is not consistent with or well-supported by the record as a whole.

Furthermore, at a psychiatric consultative examination in October 2008, claimant reported being able to care for personal hygiene, cook, do household chores, go shopping with her daughter, and sometimes go out with her daughter. Upon mental status examination, claimant exhibited intermittent eye contact, normal speech, "depressed" mood, sad and restricted affect, goal-directed thought process, and non-delusional thought content. Dr. Ekram Michiel assigned her a GAF score of 60 - indicating mild to moderate symptoms - and opined that she was able to maintain attention and concentration, carry out simple job instructions, and relate and interact with coworkers, supervisors, and the general public. The undersigned accords substantial weight to the opinion of Dr. Michiel, as it is consistent with and well-supported by the record as a whole.

For the same reasons, the undersigned likewise gives great weight to the State agency psychological consultant's assessment of a non-severe mental impairment.

7

>        Therefore, the undersigned finds that claimant has the following degree of limitation in the broad areas of functioning . . .: mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.  Because the claimant's depressive disorder causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is non-severe.
>        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>        The conclusion that the claimant does not have a physical impairment or combination of physical impairments that significantly limit her ability to perform basic work activities is supported by the objective medical evidence of conditions that are controlled with medication; the well-supported medical opinions of Dr. Stolz and Dr. Michiel; and claimant's wide range of daily activities acknowledged in the medical record.

AR 15-18, internal citations omitted.

### a. Depressive Disorder

Plaintiff's argument goes to the interpretation of Dr. Michiel's opinion.  Plaintiff asserts that this opinion supports her position.  However, a review of board certified psychiatrist Michiel's opinion reveals Plaintiff's position is misguided.  In his October 2008 report, Dr. Michiel diagnosed depressive disorder, not otherwise specified at Axis I and a Global Assessment of Functioning ("GAF") of 60 at Axis V.  AR 260-261.  Under the heading "Adaption to Work or Work-Like Situations," the doctor opined that Plaintiff "is able to maintain attention and concentration and to carry out simple job instructions.  The claimant is able to relate and interact with coworkers, supervisors and the general public . . . [but] is unable to carry out an extensive variety of technical and/or complex instructions."  AR 261.  It is plain that Dr. Michiel found Plaintiff to be mildly affected by her depression.

To the degree Plaintiff argues that Dr. Michiel's GAF score finding supports her position of moderate impairment, she is mistaken.  The GAF scale reflects a clinician's assessment of the individual's overall level of functioning.  *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV").  A GAF score between 51 and 60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few

friends, conflicts with peers or co-workers). DSM- IV at 34. A GAF score from 61 to 70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34. In any event, as this Court has pointed out on numerous occasions, the Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). The fact that ALJ Hannon did not characterize Dr. Michiel's opinion as a finding of moderate impairment is not error.

Consistent with Plaintiff's mischaracterization of Dr. Michiel's opinion, she goes on to argue the ALJ failed to provide specific and legitimate reasons for rejecting that opinion. (Doc. 15 at 6.) As noted above however, the ALJ did *not* reject Dr. Michiel's opinion. *See* AR 17. Thus, the ALJ was not required to provide such reasoning.

On a similar basis, Plaintiff argues the ALJ had an obligation to recontact Dr. Michiel "to clarify whether he intended to indicate that depression was a severe impairment within the meaning of the Act." (Doc. 15 at 6.) ALJ Hannon was under no such obligation.

In general, it is the duty of the claimant to prove to the ALJ that she is disabled. 20 C.F.R. § 404.1512(a). To this end, she must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on her ability to work. *Id*. For his part, the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3); *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001).

However, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a determination regarding the claimant's disability, he does not have a duty to contact the doctors." *Bayliss, v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

Contrary to Plaintiff's assertion, ALJ Hannon accurately assessed the record, including Dr. Michiel's report and findings, and thus this record was adequate to make a determination. Under these circumstances, the ALJ had no duty to further develop the record.

### b. Low Back Pain

Plaintiff next argues that the October 2008 MRI requires a finding of severe impairment with regard to her claim of low back pain. (Doc. 15 at 7.) The Commissioner contends no error occurred as "no physician found that Plaintiff was restricted in any way or had any functional limitations." (Doc. 16 at 8.)

A review of the medical record reveals a lack of objective findings regarding Plaintiff's lower back pain complaints prior to the MRI results.

The October 8, 2008, MRI findings read as follows:

> Mild degenerative changes of the sacroiliac joints are noted in symmetric fashion. There is a small amount of fluid within the joint spaces. There is mild sclerosis and possible minimal anterior osteophyte formation. There is no sacroiliac joint separation. No erosive changes are noted. Underlying marrow heterogeneity is present, but without evidence of a discrete mass. No soft tissue masses are noted. Note is made of marked advanced bilateral facet hypertrophy at L5-S1, with marrow edema in the posterior elements bilaterally. Degenerative change including disc changes in the lumbar spine are noted, incompletely evaluated in this exam.

AR 327. On January 21, 2009, Phillip Kim, M.D., noted the following regarding Plaintiff's low back pain and the MRI: "Marked L5-S1 bilateral facet hypertrophy and edematous change within

10

the posterior elements. There appears to be bilateral neural foramen narrowing as well. *Continue with flexeril and tramdol prn, no surgical interventions since pain is tolerated*." AR 325, emphasis added. Nearly one year later, Dr. Kim again noted Plaintiff's low back pain was "well controlled" by medications. AR 322.

Three days after the MRI was taken, Dr. Steven Stolz performed a comprehensive internal medicine evaluation. AR 263-268. On physical examination, Dr. Stoltz recorded all "WNL" or "within normal limits" range of motion findings. AR 266. He stated as follows:

> In the seated position she has no back pain with knee extensions. In the supine position she had negative straight leg raising signs. When she was in the supine position for her to go to a standing position she first turned to a prone position, sat up on her hands and knees and then stood up off the exam table. While standing she had no spinal tenderness. She had excellent range of motion and no bony tenderness.

AR 266. After obtaining WNL results in all upper and lower extremities, Dr. Stoltz's functional capacity assessment states: "Based on my observations and objective physical examination findings, I find no objective evidence for any ongoing medical disorders that would place any limitations on work-related activities." AR 267.[6]

The ALJ did not reject the opinion of any physician with regard to Plaintiff's lower back impairment because no physician found the impairment to be limiting. In fact, Dr. Kim noted Plaintiff's low back pain was controlled by medication, and Dr. Stoltz's findings regarding her back were normal.[7][8] The ALJ properly relied upon Dr. Stoltz's opinion because it was

---

[6] To the degree Plaintiff complains in her reply brief that Dr. Stoltz did not have the MRI results to review (Doc. 17 at 3), the statement is but mere speculation. The MRI is dated October 8, 2008 and Dr. Stoltz completed his examination on October 11, 2008. It is not known whether Dr. Stoltz had the MRI results; all that is known is the doctor reviewed "[a] medical records available" in preparation of the examination. *See* AR 263. In any event, Dr. Stoltz's opinion is also based on his own examination findings.

[7] Plaintiff contends the "ALJ misreported the poor grip strength as mild" (Doc. 15 at 7), but fails to explain how, even if misrepresented, Dr. Stolz's findings regarding her grip strength have any bearing on her low back pain.

[8] In her reply brief, Plaintiff contends the "ALJ did not address Dr. Kim's repeated clinical findings." (Doc. 17 at 2.) This assertion is inaccurate. While the ALJ did not refer to Dr. Kim by name, he repeatedly referred to Dr. Kim's records as "Exhibit C16F."

11

uncontradicted and based upon his own independent examination. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). Notably too, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

In sum, ALJ Hannon did not err in finding that Plaintiff's medically determinable impairments were not severe, and those findings are supported by substantial evidence.

**B.     *Dr. Parayno's Opinion***

Plaintiff contends the ALJ erred by failing to provide specific and legitimate reasons for rejecting treating physician Maximo A. Parayno's opinion. (Doc. 15 at 8.) The Commissioner asserts no error occurred because the ALJ properly discounted the opinion. (Doc. 16 at 9-10.)

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion

of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

Although also excerpted above, the Court reiterates the ALJ's specific findings regarding Dr. Parayno's opinion:

> Interestingly, claimant began treating with a private psychiatrist, Dr. Maximo Parayno, Jr., on June 16, 2008 - three days before her final examination at the Fresno County mental health clinic. Even more peculiar are the results of the initial psychiatric evaluation. Dr. Parayno found claimant oriented only to person; blunted affect; depressed mood; nightmares; feelings of hopelessness and worthlessness; poor memory, concentration, sleep, and appetite; low energy; and no interest. He made similar findings at visits through January 4, 2010. Dr. Parayno's findings are so wholly inconsistent with those of Dr. Chu from Fresno County Mental Health Services[] that the undersigned questions the validity of Dr. Parayno's findings.
> As such, the undersigned accords little weight to the January 2010 opinion of Dr. Parayno, as his opinion that claimant has poor ability to perform nearly all mental work activities is not consistent with or well-supported by the record as a whole.

AR 16-17.

Here, ALJ Hannon rejected the opinion of Dr. Parayno because it was "wholly inconsistent" with Plaintiff's previous treating psychiatrist, Dr. Chu, as well as the medical record as a whole. There is no question that both reasons are specific and legitimate reasons for discounting the contradicted opinion of a treating physician. *See Tonapetyan v. Halter*, 242 F.3d at 1149; *Magallanes v.* Bowen, 881 F.2d at 751.

Relatedly, Plaintiff contends the ALJ should have "recontacted Dr. Paranyo [*sic*] if he had concerns about the period of treatment or supportive findings." (Doc. 15 at 8.) Plainly, in light of the ALJ's findings regarding Dr. Parayno's opinion, the ALJ had no concern whatsoever about either the period of treatment or "the doctor's findings," as he found them to be "wholly inconsistent" with the records of Plaintiff's previous treating psychiatrist, Dr. Chu. *Cf.* AR 302-318 to AR 182-215.

Plaintiff's argument simply lacks merit. The ALJ's decision is based upon proper legal standards and is supported by substantial evidence.

### C. *Development of the Record*

Finally, Plaintiff argues the ALJ erred by failing to fully and fairly develop the record. More particularly, she contends the ALJ was obligated to obtain a residual functional capacity assessment from each of claimant's medical sources, and that the ALJ should have attempted to recontact Dr. Parayno "if he was confused, for clarification." (Doc. 15 at 9-10.) The Commissioner replies that Plaintiff is "simply wrong," and that the record was adequate for purposes of evaluation. (Doc. 16 at 10-11.)

It is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). However, when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d at 1150. The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the

1 | record open after the hearing to allow supplementation of the record. *Id.*

2 |     Here again, Plaintiff's challenge is misguided. This record was neither inadequate nor
3 | ambiguous for purposes of evaluation. As previously explained (*see* subh. B, *ante*), ALJ Hannon
4 | did not need clarification regarding Dr. Parayno's opinion.

5 |     More specifically, Dr. Parayno's opinion was provided on documents entitled "Complete
6 | Medical Report (Mental)," "Medical Assessment of Ability to Do Work-Related Activities
7 | (Mental)" and "Medical Source Statement, Psychiatric." AR 302-305. At the administrative
8 | hearing, there was some discussion about the date treatment commenced with Dr. Parayno and
9 | whether or not the doctor's treatment notes had been properly made a part of the record. *See* AR
10 | 24-25. The ALJ agreed with Plaintiff's counsel that the first date of treatment occurred on June
11 | 16, 2008, and the date of last visit was January 4, 2010. AR 24. Therefore, there was no
12 | confusion. Further, any clarification occurred when Plaintiff's counsel agreed to provide any
13 | missing information. *See* AR 26-27.

14 |     The Commissioner's citation to *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) in
15 | support of his position is well taken. Just as in *Tidwell,* here ALJ Hannon expressed a concern
16 | about a portion of the records from Dr. Parayno. And just as in *Tidwell*, the ALJ kept the record
17 | open so that the record could be supplemented if necessary. *See* AR 26-27. As pointed out by
18 | the Ninth Circuit in *Tidwell*: "It is important to note that at this point the ALJ satisfied his duty."
19 | *Id.*, at 602. Therefore, by keeping the record open, ALJ Hannon satisfied his duty.

20 |     With specific regard to Plaintiff's assertion that "the ALJ is obligated to request a residual
21 | functional capacity assessment (or medical source statement) from each of the claimant's medical
22 | sources," Plaintiff is, as Defendant contends, attempting to shift the burden from Plaintiff to
23 | Defendant. Plaintiff's citations to Title 20 of the Code of Federal Regulations sections
24 | 416.913(b)(6) and 416.945(a) simply do not stand for the propositions asserted.

25 |     In sum, the ALJ's decision is free of legal error and is supported by substantial evidence.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Peuang Buonnhong.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **January 26, 2012**         /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE